"That the papers showing that this action was begun by the filing of the petition on June 22, 1889, the waiver, if, any, must have been ma'e at least sixty days before that time, to enable the plaintiff to recover, unless an absolute refusal to pay in any event had been made by the defendant."

Also special instruction asked by plaintiff:

"In determinng whether the sixty days had elapsed before the action was commenced, you are not necessarily to be governed by the date when negotiations ceased between the parties in reference to the loss, but will determine from all the facts and circumstances in evidence the time when, if ever, the company waived said proofs of loss."

If under the circumstances you find for the defendant, you will return a verdict finding, upon the issues, in favor of the defendant. If you find for the plaintiff, you will return a verdict finding, upon the issues, in favor of the plaintiff, and award it damages in the amount you find from the evidence was the loss upon the property described in the policy caused by such fire, and the amount of loss or damages to be estimated according to the actual cash value of the property at the time of the loss, with interest from the time it should have been paid; but you will understand that you must keep in mind and be governed in fixing the amount by the special instruction above given.

In no event can the amount of damage awarded exceed $3,500 on that part of the property designated as stock; exceed $400 on soda fountain and fixtures inventoried; or exceed $1,100 on the furniture and fixtures mentioned.

And the defendant then on the trial excepted to said charge, as a whole, and to all the several parts of said charges marked on the margin thereof excepted to. And the defendant excepted to the special charge and instructions asked for by the plaintiffs.

The defendant asked the court to charge the jury, as follows:

"In order to effect a dissolution of a partnership it is not necessary that there be a formal dissolution of the firm, agreed upon between the partners. It is sufficient if they have separated with the intention of giving up an discontinuing their relations to each other as partners. You will, therefore, in this case consider all the testimony that has been offered in relation to this partnership in connection with the conduct of the members of the partnership toward each other, to determine whether the firm of Dun & Company at the time of bringing this action was a firm doing business in the state of Ohio."

But the court refused to give said instruc-

tions, to which refusal to so instruct the jury the defendant then excepted.

The defendant further asked the court to charge and instruct the jury as follows:

"If the firm of Dun & Company was not dissolved at the time Dun purchased the stock of drugs, etc., at sheriff's sale, and was a firm organized only to do a banking business in Sabina, Ohio, and Creighton had gone away, leaving his partner to conduct and carry on that business in his absence, then Dun would have no right to have purchased this stock of goods in the name of Dun & Company, and gone into this new business in that name without the knowledge and consent of Creighton; and if he did so, and Creighton did not consent to it at the time or subsequently, then the purchase did not bind the firm of Dun & Company, and Dun & Company did not by such purchase become the owner of said stock, and it was a misrepresentation for Dun & Company to take out the policy of insurance in the name of Dun & Company, and under that provision of the policy requiring the assured to make known the ownership, the policy would be void and the company not liable."

The court refused to give to the jury said charge and instruction, to which refusal the defendant then excepted.

The defendant further asked the court to charge and instruct the jury as follows:

"That the submission of the question of damages as to the property saved in a damaged condition by Hall and Dun, was not a waiver of the right of the defendant subsequently to demand proofs of loss."

But the court refused to give the said charge and instruction to the jury, to which refusal the defendant then excepted.

*Craighead & Craighead,* and *Mills Gardiner,* for Defendant.

*Hidy & Patton,* for Plaintiff.

---

(Superior Court of Cincinnati.)
Special Term, March, 1890.
MOSES KAHN v. CINCINNATI TIMES—STAR.

1. The publisher of a newspaper has exactly the same rights and is responsible to exactly the same extent for the abuse of that right as any other citizen.

2. A libel consists in maliciously writing or printing concerning another, any language or representation which is false and the natural tendency and effect of which are to injure such other person, in his standing and reputation in the community where he lives and is known, or in his trade or business, and hold him up to ridicule or contempt, or in any way to lessen him in public esteem.

3. It is a presumption of law that anything stated in a publication which is derogatory to the business reputation and trade of the plaintiff is false, and that the defendant in publishing the same intended to cause whatever injury naturally would and did result from such publication.

4. The law presumes every man's reputation as a tradesman to be good until the contrary is made to appear.

5. A man's known reputation in the community or general estimation in which he is held in the business community, where he lives and moves and is known, while it is the resultant of the opinion of all, it is not the individual opinion of any particular person or persons.

6. It is a good defense to an action for libel, that after the publication the plaintiff agreed with the defendant to accept the publication of an apology in full for his cause of action, and that such an apology had been published. The burden of proof, however, is upon the defendant, to show that such an agreement was made, and that there was a good consideration for the same, and that it was carried out in good faith, and that the plaintiff so agreed to accept such retraction in full satisfaction of any claim which he may have had by reason of the publication.

7. In actions of tort involving malice, fraud, insult or oppression, the jury may, in estimating compensatory damages, take into consideration the reasonable counsel fee of the plaintiff in prosecuting his action for the redress of his injuries against the wrong-doer, even when there are mitigating circumstances not amounting to a justification.

8. If the jury find the publication was libelous and that there was express malice, or a bad motive and evil intent to injure in the publication, they may go beyond mere compensation and award vindictive or punitive damages to the plaintiff; that is ,damages by way of punishment, and the jury in its discretion can determine what such damages should be.

9. Unless the article published in its entirety was true, the law implies malice, if it should be found that the article in question is libelous, and liability will attach, and the plaintiff can recover damages from the defendant.

10. The publication of defamatory matter libelous of itself is presumed to be malicious in law, unless published in performance of some legal or moral duty.

11. If the jury find the article in question libelous, and that such libelous publication concerned the business reputation of the plaintiff, or trade of the plaintiff, by imputing to him any kind of fraud, dishonesty, misconduct, incapacity, or unfitness, an action will lie without proof of actual malice, or of actual pecuniary loss, and the jury can determine the amount of damages to be allowed to the plaintiff.

12. In the case of an alleged libel of a clothing merchant, if the jury find it to be a fact that the plaintiff in his business sold goods which he represented to be tailor- made goods made on special orders, but which were in fact what is known as ready-made clothing, they may take that fact into consideration by way of mitigation of the damages claimed for injury to plaintiff's business.

13. In such case the former business reputation of the plaintiff is not to be considered by the jury in estimating damages. The business reputation of the plaintiff is presumed to be good, but such presumption may be rebutted by evidence.

14. Nominal damages rest solely in the discretion of the jury and may be simply nominal in amount.

The judgment of the court in this case was affirmed in General Term, and also in Supreme Court without report, 33 W. L. B., 144, 52 Ohio St., 662.

___

The petition contained two counts. The plaintiff dismissed the second before trial.

The first count alleged that the plaintiff was engaged in carrying on the business of a retail clothing merchant, that defendant published " of and concerning the plaintiff, and of and concerning him as a trader and retail clothier, and of and concerning his character as a merchant," an article, which it copies incorrectly.

MISSING WILLIAM KNEDLER,
*"A victom suggests the manner in which he may have met his doom.*

Both yesterday and today a sleek looking little man in a beaver hat has been seen flying in and out of Chief Hazen's office, evidently laboring under a severe attack of mental perturbation. This gentleman is named Kahn, but he is better known to the public as the proprietor of that queer looking store, whose windows and doors are heavily curtained, known as the O. M. C. P., and situated at the southwest corner of Seventh and Vine. The police have long looked with suspicion on this store, because of several complaints as to the way business is done there. Yesterday Col. Hazen sent Detective Hudson down to bring the proprietor before him, because of the receipt of the following annonymous letter, evidently written by a business man:

"Chief Deitsch :

"Dear sir : This afternoon I saw an account of a young man who came from the country to purchase a suit of clothes, and who is mysteriously missing. It called to my memory an exciting predicament I was in five years next November. It was on a Saturday night when I went to the Misfit Parlors, southwest corner Seventh and Vine streets. That night I escaped through strategy.

"One who came near being a victim."

"P. S. They have search underground traps or graves to hide their victims. There should be a thorough search made under the stairways, cellar, yard, closets and even between the floors and ceilings."

The young man referred to in the opening of the letter is William Knedler, of Foster's Crossing, O., who disappeared suddenly week before last, and has never been heard of since. The relatives of the missing man have even looked through the vats of medical colleges where the corpses are "in pickle." It is believed that he has met with violence.

The story about murders and traps at the O. M. C. P., is not credited at police headquarters, but Kahn was sent for on general principles. He became much excited over the matter and has been rushing to and fro, consulting legal authority and protesting against the pretty broad charges of unfair dealing at his store that were made by several of the police.

Charge to the jury.

HUNT, J.

Gentlemen of the jury: This is an action in which the plaintiff, Moses Kahn, complains of defendant, The Cincinnati Times-Star Company, a corporation organized under the laws of Ohio, for that, the defendant on April 14, 1888, maliciously composed and published of and concerning the plaintiff as a trade and retail clothier, and of and concerning his character as a merchant, a certain false and malicious libel, which is fully set forth in the petition.

The plaintiff further avers that by reason of the grievances set forth he has been greatly injured in his reputation and trade, and has lost a large number of customers, the names of whom, particularly, the plaintiff is unable to state, and has suffered a diminution of his business to a great extent, and has been otherwise injured in his reputation to his damage in the sum of twenty thousand dollars, for which he asks judgment.

The defendant by an amended answer admits that it is a corporation organized under the laws of Ohio; that it is engaged in the business of printing and publishing a newspaper called the Times-Star; that it published the article set forth in the petition; but denies each and every allegation set forth in the petition.

The defendant, for a second defense, pleads that the article in question appeared on April 13, 1888, in the Times-Star, in what is known as the six o'clock edition, an edition of comparatively small circulation; that the matter contained in the article would have appeared on the following day in the editions of April 14, except the six o'clock edition, according to the course of business in the office of the defendant, but for the agreement entered into by plaintiff and defendant, by which the plaintiff, on April 14, aforesaid, and after said publication, through his authorized attorney, appeared at the office of the defendant and thereupon agreed with defendant, that, if defendant would not publish said article on April 14, that the plaintiff would consider the matter of the publication on the thirteenth to be adjusted and settled, and that he would make no claim against defendant by reason of said publication, and, that the defendant in accordance with said agreement withdrew said article from further publication.

A reply has been filed which puts in issue the second defense in the amended answer.

The first question for you to decide, therefore, is whether the article in question amounts to a libel upon the plaintiff, and, to this end it will be necessary to determine what constitutes a libel.

The constitution of the state of Ohio, in sec. 11, of the bill of rights, provides that every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no law shall be passed to abridge or restrain the liberty of speech or of the press. The publisher of a newspaper has exactly the same rights and is responsible to exactly the same extent for the abuse of that right as any other citizen. His right and responsibility in the matter of a publication are no less than that of others under like circumstances. A libel may be defined to be a wrong occasioned by writing or effigy. It has been held, in reference to an individual injury, to be a false and malicious publication against one, either in print or writing, or by pictures, with intent to injure his reputation, and expose him to public hate, contempt, or ridicule. Indeed, everything printed or written, which reflects on the character of another, and is published without lawful justification or excuse, is a libel, whatever the intention may have been. Any written words are defamatory which impute to another that he has been guilty of any crime, fraud, dishonesty, immorality, vice, or dishonorable conduct; or has been accused or suspected of any such misconduct, or which suggests that the person is suffering from an infectious disorder, or which has a tendency to injure him in his office, profession, calling or trade.

A libel consists in the abuse of that constitutional right by maliciously writing or printing of and concerning another, any language or representation which is false and the natural tendency and effect of which are to injure such other person, as in this case, in his business standing and reputation in the community where he lives and is known, or in his trade or business, and hold him up to ridicule or con-

tempt, or in any way to lessen him in public esteem.

It will be your duty to take the article submitted in evidence, read it carefully as a whole and in detail, and decide as men of judgment and experience whether, as contended by the plaintiff, it has such a tendency and effect, or any of them, so far as the business reputation or the plaintiff or his calling or his trade are concerned, or whether, on the other hand, as claimed by the defendant, it can not be fairly said to have had such tendencies or effect, or any of them.

If in your judgment the publication of the article had no such tendencies or effect as have been mentioned, it will be your duty to return a verdict for the defendant without proceeding further in the case.

If, however, by reason of the publication of the article, you should find that the plaintiff was injured in his reputation and trade, and has suffered a diminution of his business as a retail clothier, and has been otherwise injured in his business reputation, then your verdict must be for the plaintiff, because it is a presumption of law that anything stated in such publication which is derogatory to the business reputation and trade of the plaintiff as alleged, is false, and that law further presumes that the defendant in publishing the same intended to cause whatever injury naturally would and did result from such publication.

It will be your duty next to consider whether your verdict, if for the plaintiff, shall be for nominal or for substantial damages. In this connection it will be necessary to determine whether, under all the circumstances disclosed by the evidence, the plaintiff has suffered a real and substantial injury to his trade or business reputation, or whether he has suffered only what is termed in law as a nominal injury. Nominal damages may be presumed from the publication of libelous matter; but the question of the amount of such nominal damages must be left to the good judgment of the jury to be exercised upon all the evidence. The amount for nominal damages must rest in the sound discretion of the jury and may not exceed one cent.

The plaintiff contends that he has been greatly injured in his business reputation, and has lost a large number of customers, and has suffered a diminution of his business to a great extent and has been otherwise injured in his reputation. If you find that the plaintiff has in fact not suffered any real or substantial injury in these respects, he is entitled to nominal damages only to vindicate his right.

If the plaintiff suffered real or substantial injuries, as alleged, then he is entitled to receive such a sum as in your judgment would fairly compensate him for such loss. It may be regarded as settled in this state that in actions of tort involving malice, fraud, insult or oppression, the jury may, in estimating compensatory damages, take into consideration the reasonable counsel fee of the plaintiff in prosecuting this action for the redress of his injuries against the wrong-doer, even when there are mitigating circumstances not amounting to a justification.

In order that you may pass intelligently upon this question of damages, if any damages are to be awarded, it will be proper for you to consider the character and extent of the business in which the plaintiff was engaged, as well as his previous reputation in such trade or business. The extent of an injury to one in his trade or business or in his reputation in relation to such trade or business, must depend partly on the nature of the publication itself, and partly on the character and extent of his business or trade. For instance a man's reputation in business may be so good as to be firmly established in public confidence, so that it can not well be injured by any such publicaton as that of which the plaintiff complains; or it may be so bad as to be incapable of serious injury therefrom, or while good, yet not so firmly established in public esteem as to prevent injury resulting to it. The law presumes every man's reputation as a tradesman to be good until the contrary is made to appear. The testimony on that subject must be carefully weighed and considered. If you find the publication a libel, as the term has been defined, it will be left to you after all to say to what extent, under all the circumstances and evidence, his reputation in business has been damaged thereby, and to what extent he has been damaged in his trade and business, subject only to the propositions of law which have been suggested by the court.

A man's known reputation in the community or general estimation in which he is held in the business community, where he lives and moves and is known, while it is the resultant of the opinion of all, it is not the individual opinion of any particular person or persons. You will decide what the known reputation of the plaintiff was at the time of this publication, for in view of all the evidence you are limited to his business reputation, and you can not go into particular acts.

There is no way of reaching a correct conclusion in cases like the one on trial except through the good judgment of the jury. The law, therefore, permits the jury to take such a view of all the facts and circumstances properly in evidence, in the assessment of damages and as may appear fairly from the preponder-

Vol 8—42.

[COPYRIGHT, 1901, BY CARL G. JAHN.]

ance of the evidence. It may appear to you that the publication complained of was made only with such malice as the law implies from the mere doing of a wrongful act, which is recognized in the law as implied malice; or with an actual evil intent or express purpose to injure; or that it was not only false, but known to be so by the defendant at the time of the publication itself, or be wantonly made without inquiry or information upon which the defendant was fairly justified in relying; or that there was nothing in the character, conduct or position of the plaintiff to palliate or excuse such publication. It may appear to you, on the contrary, that while the defendant may not convince you that he should escape the actual consequences of the alleged libelous matter, if wrongful in fact, yet there was no actual malice on the part of the defendant, no real or conscious intent to injure, no bad motive; that though in fact false, the defendant in making the publication acted upon information on which he was fairly justified in relying; that there was more or less truth, or a greater or less approach to the truth in this publication, or that there was something in the business reputation of the defendant, or in the methods of doing business or in the character of the business itself, or in any reports which may have existed in police circles, or in the letter as introduced in evidence— any such information may have reached the defendant prior to the publication itself—to palliate in a greater or less degree, or excuse in a greater or less measure the publication itself.

In case you find all or any of the circumstances last mentioned to have existed, while they do not make out a complete defense to entitle the defendant to a verdict—if you first find the publication in fact to be libelous—they are yet matters which you have a like discretion to consider and diminish your assessment of damages accordingly, in case you award damages to this plaintiff at all. These, in legal definition, are termed mitigating circumstances.

In ascertaining whether there were mitigating circumstances, or where there were aggravating circumstances, it will be proper for you to consider all the evidence, direct and circumstantial, in order that you may reach a correct conclusion. It is the province of the court to instruct you of the law; it is the province of the jury to analyze and weigh the evidence. It is the province of the court to pass upon the competency of the testimony; it is the province alone of the jury to weigh that testimony.

The defendant, in its amended answer, pleads as a second defense that an agreement was entered into by the plaintiff and defendant, through counsel. It is a good defense to an action for libel, that after the publication the plaintiff agreed with the defendant to accept the publication of an apology in full for his cause of action, and that such an apology had been published. The burden of proof, however, in such a defense as is alleged in the amended answer is upon the defendant, to show that such an agreement was made, and that there was a good consideration for the same, and that it was carried out in good faith, and that the plaintiff so agreed to accept such retraction in full satisfaction of any claim which he may have had by reason of the publication. The evidence on this point must be governed by the proposition of the law as I have indicated it. A mere naked promise in the case, unsupported by a consideration, is not of itself sufficient to maintain such a defense.

It will be your duty, gentlemen of the jury, to consider all the evidence that has been adduced in this case and apply your best judgment to all the facts and circumstances presented by the evidence under the law which has been given you by the court. The law will not be satisfied with anything less than a faithful discharge of the obligations which you assumed when you took the oath to render a true verdict according to the law and the evidence in this case.

The plaintiff has asked for certain special charges, which will be given, as follows:

"1. If defendant published the article in manner and form as alleged in the petition, and the jury should find the same libelous, and injury and damage to his business and general business character directly resulted to the plaintiff from and by reason of such publication, he will be entitled to recover damages, and in awarding to him any compensatory damages, if he is entitled to such, you may take into consideration and include reasonable fees of counsel, employed by plaintiff in the preparation and prosecution of this action.

"2. If you find that the publication was libelous and that there was express malice, or a bad motive and an evil intent to injure in the publication, you may go beyond mere compensation and award vindicative or punitive damages to the plaintiff; that is, damages by way of punishment, and the jury in its discretion can determine what such damages should be.

"3. I charge you that, unless the article published in its entirety was true, in fact, the law implies malice if it should be found that the article in question is libelous, and liability will attach, and the plaintiff can recover damages from the defendant.

"4. I charge you that, if you find the article in question libelous, and that such libelous publication concerned the business reputation of the plaintiff, or trade of the plaintiff, by imputing to him any kind of fraud, dishonesty, misconduct, incapacity, or unfitness, an action will lie without proof of actual malice, or of actual pecuniary loss, and the jury can determine the amount of damages to be allowed to the plaintiff. And in determining such damages the jury may take into consideration the reputation of the plaintiff as to the particular business in which he was engaged, as well as the character and methods of the particular business or trade in which he was engaged. The publication of defamatory matter libelous of itself is presumed to be malicious in law, unless published in performance of some legal or moral duty.

"5. All the testimony that the defendant, The Times-Star Company, has offered, with reference to the conduct of the plaintiff's business, or in other words, as to the manner in which he did business at the corner of Seventh and Vine streets can not be considered by you to justify the publication of this article, if the article should be found to be libelous, but, if considered by you, must be only taken in connection with all the testimony and facts and circumstances in the case, to mitigate or lessen the damages that you may find the plaintiff is entitled to recover."

I will also give you the following special charges asked for by the defendant:

"1. If, from a fair preponderance of the evidence the publication appears to be true, the jury may, in view thereof return a verdict for nominal damages only.

"2. If you find it to be a fact that the plaintiff in his business sold goods which he represented to be tailor-made goods, made on spjecial orders, but which were in fact what is known as ready-made clothing, you may take that fact into consideration by way of mitgation of the damages claimed for injury to plaintiff's business."

The defendant has also asked me to give the following charge:

"3. If you find the plaintiff's business consists in the sale of goods which he represented to be custom or tailor-made goods, made on special orders, but rejected because of misfits, but which were in fact what is known as ready-made clothing, then you can not award him damages for loss or injury to his said business."

Which I decline to give, but will give you in place thereof the following:

"If you find that the plaintiff's business consists in the sale of goods which he represented to be custom or tailor-made goods, made on special orders, but rejected because of misfits, but which were in fact what is known as ready-made clothing, then you can take all these facts and circumstances into consideration in ascertaining what damages, if any, he may have sustained; but, it will be your duty to ascertain whether or not the publication was libeous before any damages can be awarded."

Counsel for defendant also requested the court to give the following special charges, which the court refused:

"1. If you find that in plaintiff's said business he sold goods which were what were known as ready-made goods but which he eepresented to be what is known as tailor, cusom-made, goods, made on special orders and rejected because of being misfits, you can not allow to him in this case any damages for loss or injury to his said business.

"2. The measure of damages for loss to business is not the amount by which sales may have fallen off, but the loss of the profits which plaintiff would have made on such lost sales. You must find from the evidence what that profit was, and must also find that the falling off of sales was due to the publication complained of; and in estimating the loss of trade or business you will take into consi"eration all the evidence."

Counsel for defendant excepted to the action of the court in refusing to give the special charges requested by defendant; and to the special charges given at plaintiff's request; and to the modifications of special charge asked by the defendant and made by the court.

Mr. Kramer: "We except to each and every one of the special charges given for the defendant. Except to that part of the general charge which says that nominal damages can not be over one cent; we except to the amended charge as to nominal damages, unless the court defines what nominal damages consist of. We except to that portion of the charge in which the court says the jury may take into consideration the business reputation of the defendant prior to the time the article complained of was published; and that it was the duty of the court to charge that the jury must find that the business reputation of the defendant was good before the article complained of was published; that the jury have no right to find that it was not good in this case."

Counsel for plaintiff asked the court to give the following special charges to the jury:

"1. I charge you that you must presume the general business reputation, in this trade, of the plaintiff prior to the publication of the article complained of to have been good, and no testimony having been offered by the defendant to rebut that presumption I charge you for the purpose of this case, the jury have no

right to find that the general business reputation in this trade in the community of the plaintiff was not good prior to this publication.

"2. I charge you that I inadvertently erred in charging you before that you have a right to take into consideration the plaintiff's business reputation in his business prior to the publication of this article. I charge you now that you have no right to take that into consideration, but it must be presumed to be good by you."

Which charges the court refused to give, and to which refusal counsel for plaintiff then and there excepted.

And thereupon the court gave the following additional charge to the jury:

"I charge you that the former business reputation of the plaintiff is not to be considered by you in estimating damages. The business reputation of the plaintiff is presumed to be good, but such presumption may be rebutted by evidence; and if the jury find from the evidence that he has suffered damages to his reputation in business by the reason of the alleged publication, if libelous, they may award such damages as may seem proper under all the circumstances, otherwise not.

"It was said to you a moment ago on the question of nominal damage, as excepted to by counsel, that they should discretion of the of the jury and may be only nominal in amount. So where it was stated that it could not exceed one cent, it will be eliminated from the charge. Nominal damages rest solely in the discretion of the jury and may be simply nominal in amount."

Counsel for plaintiff requested that the special charges go into the jury room, to which counsel for defendant objected, which objection the court sustained, to which ruling counsel for plaintiff then and there excepted.

Whereupon the jury retired to consider of their verdict, and returned a verdict for plaintiff, as appears of record. Whereupon the defendant filed a motion in writing to set aside said verdict and for a new trial on the grounds set forth in said motion, as also appears of record, which motion the court overruled, to which defendant excepted, and rendered judgment, all as appears of record, to which defendant excepted. And thereupon defendant presented this, its bill of exceptions and asked that the same be allowed, signed, sealed and made part of the record, which is now done, at said term.